UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**DAKOTA SCOTT DUNCAN**                                                     **PLAINTIFF**

**v.**                                                  **CIVIL ACTION NO. 4:22-CV-P77-JHM**

**CASSIE THOMPSON** *et al.*                                                **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff Dakota Scott Duncan filed this *pro se* prisoner 42 U.S.C. § 1983 action.[1] This matter is before the Court upon initial review of the complaint under 28 U.S.C. § 1915A. For the reasons set forth herein, the Court will dismiss the action.

### I.

Plaintiff is incarcerated as a convicted prisoner at DCDC. As Defendants, he names Daviess County and Southern Health Partners (SHP), as well as Cassie Thompson, Nicki Fentress, and Jenny Phillips, who he indicates are nurses at DCDC employed by SHP, and Tamberly McCoy, who he identifies as a doctor at DCDC employed by SHP. Plaintiff sues Defendants Thompson, Fentress, Phillips, and McCoy in their official and individual capacities.

Plaintiff states as follows in the complaint:

On 4/15/22 . . . I went to medical for bug bites on my legs. I was seen by Nurse [] Fentress, and she made an educated guess that it was not bug bites instead it was either ingrown hairs or dry skin caused by the shower, she told me to use lotion and she gave me hydrocortisone cream 2x a day for 3 days. On 5/02/2022 . . . I was checked for scabies along with other inmates in cell 110 and 12 inmates including myself had a rash consistent with a scabies infection. I was seen by Head Nurse [] Phillips and Nurse [] Thompson, they only treated the inmates that had scabies with Permethrin Cream 5% [] and instructed us to thoroughly massage the Permethrin Cream into our skin from head to the soles of our feet and keep it on for 12 hours, after 12 hours they would come back, have us take a shower, and then change all 41 inmates bed lines, jump suites, and laundry. After 12 hours the guards came in, told us to take a shower, changed our bed lines, Jump suites but didn't replace our

---

[1] Plaintiff initially filed this action with two other inmates incarcerated at Daviess County Detention Center (DCDC). However, the Court entered an Order severing the other inmates' claims from this action (DN 6).

infected laundry. Whenever we asked the guards about our clothing, they acted like they didn't know what we were talking about. On 5/06/2022 the same 13 inmates had to be retreated due to the fact that only our bed linens and jump suites were changed because the guards did not want to listen to the nurses instructions. On 5/05/2022 I was by Dr. [] McCoy for dizzy spells, she was then told by Nurse [] Thompson that myself and + 12 other inmates had scabies . . . . [Dr.] McCoy did not ask any questions about any kind of treatment or if we were given any kind of treatment, all [she] said was oh. On 5/15/22 we were put back on isolation because [another inmate was diagnosed with scabies]. On 5/17/2022 [Dr.] McCoy decide to treat the entire cell instead of treating only the 13 that had scabies. If the nurse and Doctor would have treated and isolated Jeremy Cole (the main person that had scabies) before it spread none of would have caught scabies and it would not have spread throughout the cell.

I believe the 8th Amendment of my constitutional rights was violated because Nurse [] Thompson, Nurse [] Fentress, Head Nurse [] Phillips, and [Dr.] McCoy could have isolated + treated Jeremy Cole instead they continued to put him back in cell 110 after numerous visits over bites over all his body and told him that it was nothing contagious. Jeremy Cole put in multiple grievances concerning the bites on his body but was not treated or tested for scabies until 5/02/2022 which is after the scabies infection spread throughout the cell from person to person. . . .

As relief, Plaintiff seeks damages.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 544 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**III.**

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Daviess County, SHP, Official-Capacity Claims

As to Defendant Daviess County, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

The same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation, such as Defendant SHP, which has presumably contracted with Daviess County to provide medical services to inmates. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). Moreover, "[o]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell*, 436 U.S. at 691 n.55). Thus, Plaintiff's official-capacity claims against Defendants Phillips, Fentress, Thompson, and McCoy are actually brought against their employer, SHP.

In the instant case, Plaintiff does not allege that he was denied medical treatment pursuant to a policy or custom of either Daviess County or SHP. Accordingly, Plaintiff's claims against

Defendants Daviess County and SHP and his official-capacity claims against Defendants Phillips, Fentress, Thompson, and McCoy must be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual-Capacity Claims

The Court next turns to Plaintiff's individual-capacity claims. An Eighth Amendment claim for deliberate indifference to a serious medical need has both an objective and a subjective component. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). To meet the objective component, the plaintiff must show that the medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For purposes of this initial review, the Court will assume that scabies constitutes a sufficiently serious medical need and satisfies the objective standard of an Eighth Amendment claim.

The subjective component of the Eighth Amendment standard is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). Under the subjective prong, a plaintiff must show: (1) "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner"; (2) the official "did in fact draw the inference"; and (3) the official "then disregarded that risk." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014).

In addition, in *Alspaugh v. McConnell*, the Sixth Circuit held as follows:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

643 F.3d 162, 169 (6th Cir. 2011).

The Sixth Circuit has also held that "[a] plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

Upon review of Plaintiff's allegations, the Court concludes that Defendants Phillips, Fentress, Thompson, and McCoy cannot be said to have acted with reckless disregard to Plaintiff's serious medical need. Although Plaintiff alleges that the first inmate who contracted scabies in his cell should have been correctly diagnosed by these Defendants sooner and then promptly isolated from his cellmates; that Defendant Fentress initially misdiagnosed Plaintiff with ingrown hairs or dry skin instead of scabies; and that Defendant McCoy took no action upon learning that Plaintiff had been diagnosed with and treated for scabies, none of these allegations show that any of these Defendants subjectively perceived facts from which to infer a substantial risk to Plaintiff and then disregarded that risk. Despite Plaintiff's allegations of misdiagnosis and a difference of opinion in treatment, these allegations are not sufficient to meet the subjective component of an Eighth Amendment claim, especially where his allegations also reflect that he was eventually correctly diagnosed with scabies and provided appropriate treatment. Plaintiff's allegations suggest, at most, that some of these Defendants may have acted with negligence which is not enough to state a constitutional claim.

Thus, the Court concludes that Plaintiff's individual-capacity claims must also be dismissed for failure to state a claim upon which relief may be granted.

## IV.

The Court will enter a separate Order dismissing this action for the reasons stated herein.

Date: December 21, 2022

*[signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
     Defendants
     Daviess County Attorney
4414.011